## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

DERRICK STALEY
6 N. Parade Avenue, Lower Apt.
Buffalo, New York 14211

NEVAEH STALEY
6 N. Parade Avenue, Lower Apt.
Buffalo, New York 14211

        Plaintiffs,

v.

THE CITY OF BUFFALO
c/o Corporation Counsel
65 Niagara Street, 1100 City Hall
Buffalo, New York 14202

ALLYSA TABORN, individually and in her
capacity as a Buffalo Police Officer,
74 Franklin Street
Buffalo, New York 14202

AHMED ABDO, individually and in his
capacity as a Buffalo Police Officer,
74 Franklin Street
Buffalo, New York 14202

ERIC PRENTISS, individually and in his
capacity as a Buffalo Police Officer,
74 Franklin Street
Buffalo, New York 14202

JOHNATHAN JACKSON, individually and in
his capacity as a Buffalo Police Officer,
74 Franklin Street
Buffalo, New York 14202

CHRISTINA IHLE, individually and in her
capacity as a Buffalo Police Officer,
74 Franklin Street
Buffalo, New York 14202

**FIRST AMENDED
COMPLAINT AND
JURY DEMAND**

Civil Action No.: 1:22-CV-00620-JLS

JOSEPH FISCHER, individually and in his
capacity as a detective for the City of Buffalo
Police Department,
74 Franklin Street
Buffalo, New York 14202

DEBORAH STWORZYDLAK, individually
and in her official capacity as a caseworker for
Erie County Child Protective Services,
2875 Union Road, Suite 356
Cheektowaga, New York 14227

        Defendants.

Plaintiffs, Derrick Staley ("Mr. Staley") and Nevaeh Staley ("Nevaeh")

(collectively referred to as "Plaintiffs"), by their attorneys, Rupp Pfalzgraf LLC, as and for their

complaint against defendants, the City of Buffalo, Police Officer Allysa Taborn, Police Officer

Ahmed Abdo, Police Officer Johnathan Jackson, Police Officer Christina Ihle, Detective Joseph

Fischer, and Deborah Stworzydlak (collectively referred to as "Defendants"), allege the

following:

## **PRELIMINARY STATEMENT**

1.      Plaintiffs bring this action for compensatory damages, punitive damages,

attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988, and other damages that this Court deems

just and proper, for violations of their Constitutionally protected civil rights.

2.      At issue in this litigation are two separate removals of Nevaeh from

Mr. Staley's home effected by an Erie County Child Protective Services ("CPS") caseworker,

and the actions of law enforcement officers which have violated Mr. Staley's constitutional rights

to be free from: (1) false arrest; (2) unreasonable searches and seizures; (3) malicious

prosecution; and (4) government interference with the parent-child relationship. Additionally, this litigation concerns the unlawful practices and policies of the City of Buffalo, which encourage routine violations of its residents' rights.

## **JURISDICTION**

3.      This action is brought under 42 U.S.C. §§ 1983 and 1988 to redress violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

4.      This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

## **VENUE**

5.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Western District of New York because the events forming the basis of this complaint occurred in this District.

## **PARTIES**

6.      At all times hereinafter mentioned, Mr. Staley was and is a resident of the State of New York, County of Erie, currently residing at 6 N. Parade Avenue, Lower Apt., Buffalo, New York 14211.

7.      Nevaeh Staley also was and is a resident of the State of New York, County of Erie, currently residing with her father at 6 N. Parade Avenue, Lower Apt., Buffalo, New York 14211.

8.      Defendant, the City of Buffalo, was and is a municipal corporation duly organized and existing under the laws of the State of New York and has a business address at City Hall, 65 Niagara Square, Buffalo, New York 14202.

9.      Defendant, Allysa Taborn, was and is a resident of the County of Erie, State of New York.  She was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned, and was acting within the scope of her employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Defendant Taborn is being sued in her individual capacity for damages caused by her actions.

10.      Defendant, Ahmed Abdo, was and is a resident of the County of Erie, State of New York.  He was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Defendant Abdo is being sued in his individual capacity for damages caused by his actions.

11.      Defendant, Eric Prentiss, was and is a resident of the County of Erie, State of New York.  He was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Defendant Prentiss is being sued in his individual capacity for damages caused by his actions.

12.     Defendant, Johnathan Jackson, was and is a resident of the County of Erie, State of New York.  He was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Defendant Jackson is being sued in his individual capacity for damages caused by his actions.

13.     Defendant, Christina Ihle, was and is a resident of the County of Erie, State of New York.  She was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned, and was acting within the scope of her employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Defendant Ihle is being sued in her individual capacity for damages caused by her actions.

14.     Defendant, Joseph Fischer, was and is a resident of the County of Erie, State of New York.  He was and is a Detective employed by the City of Buffalo at all times hereinafter mentioned, and he was acting within the scope of his employment and official capacity as a detective at the time of the incident giving rise to this lawsuit.  In addition, Defendant Fischer is being sued in his individual capacity for damages caused by his actions.

15.     Defendant, Deborah Stworzydlak, was and is a resident of the County of Erie, State of New York.  She was and is a caseworker employed by the County of Erie CPS at all times hereinafter mentioned, and was acting within the scope of her employment and official capacity as a caseworker for CPS at the time of the incidents giving rise to this lawsuit.  In

addition, Defendant Stworzydlak is being sued in her individual capacity for damages caused by her actions.

## **FACTUAL BACKGROUND**

### A. **October 2021 Removal**

17.     On February 8, 2021, Nevaeh was born with marijuana and cocaine in her system.  Further, she tested positive for syphilis at birth.

18.     The drugs and sexually transmitted infection were passed down from her mother, Shante Worthy ("Ms. Worthy").  CPS began monitoring Nevaeh's safety after her birth.

19.     On March 23, 2021, a neglect petition was filed against Mr. Staley due to allegations of domestic violence committed by both him and Ms. Worthy against one another.

20.     Pursuant to that petition, no offensive contact orders for both Mr. Staley and Ms. Worthy were issued by the Erie County Family Court.

21.     Despite this order, Ms. Stworzydlak required Mr. Staley to allow Ms. Worthy to stay in his home so that she would not be homeless.

22.     On October 12, 2021, Ms. Stworzydlak filed an "amended" neglect petition against Plaintiff in response to Ms. Worthy's unwillingness to comply with her drug rehabilitation requirements.

23.     Pursuant to the "amended" petition, Mr. Staley agreed to a safety plan with Ms. Stworzydlak.

24.     As written in the petition, the safety plan was as follows: "Ms. Worthy and the children still stay at both the maternal grandmother's house and [Mr. Staley's] house. . . .Ms. Worthy reports that she will be moving into her own apartment the week of October 18, 2021. . . .Mr. Staley reports he is scheduled to start and [sic] anger management program October 12, 2021[.]"

25.     Ms. Stworzydlak claims that there was an additional verbal aspect of the safety plan that prohibited Mr. Staley from leaving Ms. Worthy alone with Nevaeh.

26.     Mr. Staley vehemently denies that he was told not to allow Ms. Worthy to be alone with Nevaeh.

27.     On the contrary, Mr. Staley was mandated to allow Ms. Worthy to live with them.

28.     On October 18, 2021, Ms. Stworzydlak removed Nevaeh from Mr. Staley's home after receiving a report that he left Ms. Worthy alone with Nevaeh.

29.     Ms. Stworzydlak alleged that this violated the verbal aspect of the safety plan entered the prior week.

30.     On January 24, 2022, Nevaeh was reunified with Mr. Staley on consent of all parties.

31.     Prior to this, on December 15, 2021, Ms. Worthy was arrested for criminal mischief and criminal contempt after violating her order of protection and harassing Mr. Staley.

32.     After this incident, Ms. Worthy was no longer permitted to have any access to Nevaeh, unsupervised or otherwise.

33.     Nevaeh was in kinship care for three (3) months in connection with the October 2021 petition.

**B. April 2022 Removal**

34.     On April 28, 2022, at around 6:00 AM, Ms. Worthy showed up at Plaintiffs' home with a baseball bat and demanding to be given Nevaeh.

35.     Upon information and belief, Ms. Worthy was under the influence of drugs when she arrived at Plaintiffs' home, and Mr. Staley believed her to be under the influence of drugs at the time.

36.     Additionally, as explained above, Ms. Worthy was not permitted to have access to Nevaeh.

37.     Moreover, Ms. Worthy was not permitted to have any offensive contact with Mr. Staley under an existing order of protection.

38.     Prior to this incident, Ms. Worthy had violated this order of protection eleven separate times.

39.     In fact, Mr. Staley and Ms. Worthy were scheduled to appear in small claims court that morning for damage she had intentionally caused to his car in the December 15, 2021, incident.

40.     Mr. Staley denied Ms. Worthy's demand for Nevaeh and, in response, Ms. Worthy smashed his windows with the baseball bat and fled the scene.

41.     At 6:14 AM, immediately after Ms. Worthy fled, Mr. Staley called 911 to report the property damage and the additional violation of the order of protection.

42.     After ensuring that Nevaeh was not injured from any broken glass or debris, Mr. Staley drove her to daycare.

43.     On his way home, at about 6:45 AM, Mr. Staley stopped at the Buffalo Police Department's C-District stationhouse, again reporting Ms. Worthy's criminal actions.

44.     The officers directed him to file a formal complaint against her, return home, and await further instruction from the police.

45.     At about 7:30 AM, Ms. Worthy called 911 from 90 Goodyear Avenue in Buffalo, alleging that Mr. Staley beat her with a baseball bat on Broadway Avenue in Buffalo.

46.     Shortly thereafter, Officers Taborn, Abdo, and Prentiss arrived at 90 Goodyear Avenue.

47.     As shown by body-worn camera footage, Ms. Worthy answered the door, bleeding and hunched over in pain.

48.     She told the officers that Mr. Staley beat her with a bat outside of his home, on North Parade Avenue in Buffalo, which is roughly two miles away from Goodyear Avenue.

49.     In response, the officers asked how she got from North Parade Avenue to Goodyear Avenue.  She stated that she walked.

50.     Upon hearing this, the officers immediately expressed doubts about the plausibility of her allegations.

51.     For example, Officer Taborn stated, "She said she walked here, but you would see like bleeding [on the sidewalk] if she walked here."

52.     Officer Abdo agreed, stating, "Ain't no way she walked . . . I don't think she walked here."

53.     Further, Officer Taborn noted that Mr. Staley was wearing all white at the stationhouse, so if he beat her the officers would have seen blood on his clothes.

54.     Nevertheless, based solely on Ms. Worthy's implausible allegations, the officers determined that they were going to arrest Mr. Staley or, in Officer Taborn's words, "snatch his soul up out the house."

55.     Additionally, Officer Taborn conceived the idea of pretending to be responding to Mr. Staley's complaint against Ms. Worthy when they arrived, telling her fellow officers, "The thing is, since he came to the stationhouse to make a report, he might actually answer the door if just we go knock on it."

56.     At Officer Taborn's instruction, Officers Jackson and Ihle arrived at Mr. Staley's home at about 8:30 AM.

57.     Officer Jackson knocked on Mr. Staley's door, asking which windows Ms. Worthy broke.

58.     Based on Officer Jackson's question, and because he had not been informed of Ms. Worthy's allegations against him, Mr. Staley reasonably believed that the officers were responding to his complaint against Ms. Worthy.

59.     Mr. Staley, therefore, opened his door allowing Officers Jackson and Ihle to enter his home to show them the extent of the property damage.

60.     Shortly thereafter, Officers Taborn and Prentiss entered and searched Mr. Staley's home while he was distracted by Officer Jackson's questioning about the property damage.

61.     Officer Taborn searched the living room, bedroom, kitchen, and dining room, looking for any evidence of the assault.

62.     Eventually, she found a baseball bat leaning against the wall in the dining room.

63.     This was the bat that Ms. Worthy brought to Mr. Staley's home and used to break his windows that morning.

64.     After waiting for Officer Jackson to direct Mr. Staley outside, Officer Taborn snuck behind Mr. Staley to grab the baseball bat and put it in her patrol car.

65.     Once they stepped outside, Officer Jackson told Mr. Staley he needed to come back to the stationhouse to provide a statement regarding his complaint against Ms. Worthy.

66.     Officer Jackson put Mr. Staley in the back of his patrol car, assuring him that this was just protocol, and telling him that he was "not like a criminal or anything."

67.     Officer Ihle then informed dispatch that they got the male from the "Goodyear call," i.e., Ms. Worthy's complaint, and were "transporting him back to the stationhouse."

68.     Officers Jackson and Ihle then walked Mr. Staley into an interrogation room, shutting the door behind him and locking him inside.

69.     During this entire exchange at Mr. Staley's home, in the patrol vehicle, and in the stationhouse, the officers never informed Mr. Staley of any allegations made by Ms. Worthy against him.

70.     While Mr. Staley waited in the interrogation room, Officer Abdo and Detective Fisher went to Erie County Medical Center ("ECMC") to take a statement from Ms. Worthy.

71.     Ms. Worthy changed her story multiple times while at ECMC.

72.     First, she alleged that Mr. Staley "found her on Broadway and Miller," jumped out of his car, and beat her there.

73.     Then, she alleged that she was hanging out at Mr. Staley's home, then he got mad because she wanted to leave, so he beat her there, also striking Nevaeh.

74.     In response, Detective Fischer informed Ms. Worthy that Nevaeh was dropped off at daycare that morning with no signs of injury.

75.     After hearing this, Ms. Worthy changed her story again.  This time stating that Mr. Staley saw her "while riding around on Broadway," and drove her back to his house, beating her with a bat and both locations.

76.     The next day, on April 29, 2022, Detective Fischer returned to ECMC to collect another statement from Ms. Worthy.

77.     During this interview, Ms. Worthy changed her story once again.

78.     She now alleged, in her sworn statement, that she called Mr. Staley to pick her up in the morning.  Then, before they got inside, he got mad because she wanted to get her menstrual pads from inside.  She alleged that he beat her with a bat in the driveway and inside his house, including inside Nevaeh's room, and that she narrowly escaped on foot.  Further, she stated that, while escaping and with serious injuries, she found a stick in his hallway and smashed all of his windows.

79.     Based solely on Ms. Worthy's inconsistent allegations, the officers charged Plaintiff with assault, criminal possession of a weapon, and endangering the welfare of a child.

80.     On November 11, 2022, all charges against Plaintiff were dismissed for untimely prosecution under N.Y.C.P.L. § 170.30(1)(d).

81.     Upon information and belief, the Erie County District Attorney's office was unable to prepare for trial due to the lack of plausible evidence against Plaintiff.

82.     In addition to the criminal proceeding, CPS instituted a neglect proceeding against Mr. Staley based solely upon Ms. Worthy's false allegations.

83.     Ms. Stworzydlak attempted to interview Mr. Staley on the date of the incident, April 28, 2022.  However, Mr. Staley refused to speak with her because he did not trust her to provide an accurate account of their discussion based on the prior issues with her before and discussed above.

84.     Mr. Staley also refused to speak with Detective Fischer without an attorney present on the date of the incident.

85.     The next day, April 29, 2022, Ms. Stworzydlak removed Nevaeh from Mr. Staley's home.

86.     Throughout the neglect proceeding, Mr. Staley continually informed Ms. Stworzydlak that all charges against him were dismissed and continually presented her with evidence of his innocence.

87.     However, Ms. Stworzydlak ignored all exculpatory evidence and refused to withdraw the proceedings against him.

88.     Further, Ms. Stworzydlak provided false testimony against Mr. Staley.

89.     She testified that Mr. Staley provided an "inconsistent account" of the incident when she interviewed him on April 28, 2022, when, in truth, Mr. Staley refused to speak with her that day.

90.     Additionally, Officer Taborn and Detective Fischer provided false, incomplete, and misleading testimony against Mr. Staley during the neglect proceedings.

91.     For example, Officer Taborn testified that Ms. Worthy reported being beaten at Plaintiff's home at 6 North Parade Street and walking back to her home at 90 Goodyear Avenue.  However, Officer Taborn failed to mention that she did not believe this was a plausible allegation.

92.      Further, Detective Fischer testified that Ms. Worthy provided a consistent narrative of the assault at all times.  Detective Fischer failed to mention that Ms. Worthy actually changed her story multiple times.

93.     The Family Court, on Mr. Staley's opposed motion, finally ordered Nevaeh's return home on September 6, 2023.

94.     Nevaeh was in foster care for sixteen (16) months in connection with this proceeding.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
**Malicious Prosecution under 42 U.S.C. § 1983**
**Against Officers Taborn, Abdo, Prentiss, Jackson, Ihle, and Detective Fischer**

95.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 94 of the complaint as if fully set forth herein.

96.     The above-referenced defendants initiated and procured the institution of criminal proceedings against Mr. Staley in violation of the Fourth and Fourteenth Amendments to the Constitution.

97.     The defendants knew that probable cause did not exist to arrest, charge, and prosecute Mr. Staley for Assault in the Second Degree, Criminal Possession of a Weapon, and with Endangering the Welfare of a Child.

98.     Nevertheless, the defendants acted intentionally and with malice to arrest, charge, and prosecute Mr. Staley for said offenses.

99.     On November 11, 2022, the prosecution against Mr. Staley terminated in his favor.

100.     As a direct and proximate result of the foregoing, Mr. Staley was damaged and injured in an amount to be determined at trial.

101.   The aforesaid conduct by the defendants was willful, malicious, oppressive, and reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SECOND CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**False Arrest under 42 U.S.C. 1983**
**<u>Against Officers Taborn, Abdo, Prentiss, Jackson, Ihle, and Detective Fischer</u>**

102.   Plaintiffs incorporate the allegations contained in paragraphs 1 through 101 of the complaint as if fully set forth herein.

103.   The above-referenced defendants intentionally and unlawfully initiated a criminal prosecution against Mr. Staley and had him arrested in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

104.   The defendants subjected Mr. Staley to an illegal, false, and unlawful arrest by taking him into custody, detaining him, and confining him without probable cause, privilege, or consent.

105.   Mr. Staley was conscious of his arrest, detainment, and confinement, when he was locked in an interrogation room for over an hour and when he was placed in a cell at the Erie County Holding Center.

106.    Further, as law enforcement officers, the defendants were acting under the color of law.

107.    As a direct and proximate result of the foregoing, Mr. Staley was damaged and injured in an amount to be determined at trial.

108.    The aforesaid conduct by the defendants was willful, malicious, oppressive, and reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## THIRD CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT**
**Unreasonable Search and Seizure under 42 U.S.C. § 1983**
**<u>Against Officers Taborn, Prentiss, Jackson, and Ihle</u>**

109.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 108 of the complaint as if fully set forth herein.

110.    The above-referenced defendants used deceit and trickery to manufacture Mr. Staley's consent to enter and search his home for evidence of the alleged assault of Ms. Worthy.

111.    The defendants intentionally led Mr. Staley to believe that they were investigating only his allegations of property damage by Ms. Worthy in order to gain entry to his home.

112.    This search and seizure of Mr. Staley's home and property was unlawful and unreasonable as it was executed without any lawful authority.

113.    The defendants' conduct deprived Mr. Staley of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure.

114.    Further, as law enforcement officers, the defendants were acting under the color of law.

115.    As a direct and proximate result of the foregoing, Mr. Staley was damaged and injured in an amount to be determined at trial.

116.    The aforesaid conduct by the defendants was willful, malicious, oppressive, and reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

### FOURTH CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**Failure to Intervene under 42 U.S.C. § 1983**
**Against Officers Taborn, Abdo, Prentiss, Jackson, Ihle, and Detective Fischer**

117.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 116 of the complaint as if fully set forth herein.

118.    The above-referenced defendants failed to take reasonable steps to prevent their fellow officers from engaging in the illegal acts alleged herein, though they were present at the scene of such violations and were capable of doing so.

119.    The defendants' actions violated Mr. Staley's rights under the Fourth and Fourteenth Amendments.

120.    Further, as law enforcement officers, the defendants were acting under the color of law.

121.    As a direct and proximate result of the foregoing, Mr. Staley was damaged and injured in an amount to be determined at trial.

122.    The aforesaid conduct by the defendants was willful, malicious, oppressive, and reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
### Conspiracy to Violate Plaintiff's Constitutional Rights
### <u>Against Officers Taborn, Abdo, Prentiss, Jackson, Ihle, Detective Fischer</u>

123.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 122 of the complaint as if fully set forth herein.

124.    The above-reference defendants conspired to deprive Mr. Staley of his rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

125.    Officers Taborn, Prentiss, Jackson, and Ihle conspired amongst themselves to trick Mr. Staley into consenting to a search of his home, and to his arrest, by pretending that they were still investigating his complaints of property damage against Ms. Worthy.

126.    Further, each of the above-reference defendants conspired to unlawfully arrest and charge Mr. Staley for Assault, Criminal Possession of a Weapon, and Endangering the Welfare of a Child, knowing that probable cause did not exist for such offenses.

127.    As a direct and proximate result of the foregoing, Mr. Staley was damaged and injured in an amount to be determined at trial.

128.    The aforesaid conduct by the defendants was willful, malicious, oppressive, and reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

**SIXTH CLAIM FOR RELIEF**

**VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS**
**Violation of Right to Intimate Association under 42 U.S.C. § 1983**
**Against Officers Taborn, Abdo, Prentiss, Jackson, Ihle,**
**and Detective Fischer**

129.    Plaintiffs incorporate the allegation contained in paragraphs 1 through 128 of the complaint as if fully set forth herein.

130.    Plaintiffs have a protected right to intimate association with one another under the First and Fourteenth Amendments to the United States Constitution.

131.    Plaintiffs were deprived of said right without due process of law, as the above-referenced defendants ignored all exculpatory evidence and charged Mr. Staley with Assault in the Second Degree, Criminal Possession of a Weapon, and Endangering the Welfare of a Child.

132.    Upon information and belief, the defendants understood or were aware that charging Mr. Staley with these offenses would have the likely effect of terminating his custody of Nevaeh.

133.    As a result of the defendants' unconstitutional conduct, Plaintiffs were unable to reside together for over sixteen months, as Nevaeh was placed into foster care during that period.

134.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

135.    The aforesaid conduct by the defendants was willful, malicious, oppressive, and reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

### SEVENTH CLAIM FOR RELIEF

### VIOLATION OF THE FOURTEENTH AMENDMENT
#### Violation of Substantive Due Process under 42 U.S.C. § 1983
#### Against Officer Taborn, Detective Fischer, and Ms. Stworzydlak

136.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 135 of the complaint as if fully set forth herein.

137.    As her father, Mr. Staley has a constitutionally protected liberty interest in Nevaeh's care, custody, and management under the Fourteenth Amendment to the United States Constitution.

138.    The constitutional right to Nevaeh's care, custody, and management was violated when Ms. Stworzydlak, on two separate occasions, effected and continued Nevaeh's removal from his home without a reasonable basis for believing that she had been neglected or abused.

139.     Further, Officer Taborn, Detective Fischer, and Ms. Stworzydlak each ignored all exculpatory evidence and provided false or misleading testimony against Plaintiff during the second neglect proceedings, further violating his constitutionally protected right to her custody and care.

140.     The interference with Plaintiffs' liberty interests were severe because Nevaeh was removed from Mr. Staley's care for nineteen (19) months in total.

141.     The actions of the above-referenced defendants were so egregious, and so outrageous, that they may fairly be said to shock the contemporary conscience.

142.     Further, the defendants' acted in violation of clearly established constitutional law.  No reasonable law enforcement officer or CPS caseworker would have believed that their actions were lawful.

143.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

144.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## EIGHTH CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**Abuse of Process under 42 U.S.C. § 1983**
**Against Officer Taborn, Detective Fischer, and Ms. Stworzydlak**

145.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 144 of the complaint as if fully set forth herein.

146.     The above-referenced defendants committed an abuse of process by attempting to utilize the Erie County Family Court neglect proceedings to accomplish an improper purpose – ensuring that Plaintiffs cannot reside together.

147.     In accomplishing this improper purpose, the above-named defendants each ignored all exculpatory evidence and presented false or misleading testimony during the neglect proceedings.

148.     For example, Officer Taborn testified that she relied on Ms. Worthy's statements to her at the scene of the crime to arrest Mr. Staley.

149.     She failed to mention that, as her statements overheard on her body-worn camera revealed, that she expressed serious doubts as to the plausibility of Ms. Worthy's statements.  Further, she fails to inform the court that all charges against Mr. Staley were dropped due to the implausibility of Ms. Worthy's narrative.

150.    Additionally, Detective Fischer falsely stated that Ms. Worthy provided a consistent narrative of the assault when he spoke to her on April 28, 2022, and April 29, 2022.

151.    He fails to mention that her narratives were entirely inconsistent on whether Mr. Staley picked her up that morning, where she was assaulted, why she was assaulted, and whether Nevaeh was also injured.  Further, he fails to mention that Nevaeh was found at daycare with no injuries on the morning of the incident.  Moreover, he also fails to inform the court that all charges against Mr. Staley were dropped due to the implausibility of Ms. Worthy's narrative.

152.    Ms. Stworzydlak, for her part, testified that Mr. Staley provided an inconsistent account of the incident when they spoke on April 28, 2022.

153.    In reality, Mr. Staley refused to speak with Ms. Stworzydlak that day.

154.    In this regard, the defendants employed legal process in an improper manner and with ulterior motives.

155.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

156.    The aforesaid conduct by the defendants was willful, malicious, oppressive, and reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## NINTH CLAIM FOR RELIEF

### MUNICIPAL LIABILITY
### *Monell* Claim under 42 U.S.C. § 1983
### <u>Against the City of Buffalo</u>

157.   Plaintiffs incorporate the allegations contained in paragraphs 1 through 156 of his complaint as if fully set forth herein.

158.   At all times relevant herein, the City of Buffalo developed and maintained policies, customs, and practices exhibiting deliberate indifferences to the constitutional rights of persons in the City, which caused the violation of Plaintiffs' rights.

159.   The City of Buffalo was aware that Officers Taborn, Abdo, Prentiss, Jackson, Ihle, and Detective Fischer were inadequately trained on the Fourth and Fourteenth Amendments, yet the City of Buffalo maintained the policy or custom of failing to provide these officers with training on the Fourth and Fourteenth Amendments or adequate supervision.

160.   It is the policy and custom of the City of Buffalo to inadequately supervise and train its police officers, including Officers Taborn, Abdo, Prentiss, Jackson, Ihle, and Detective Fischer, thereby failing to prevent the constitutional violations against Plaintiffs.

161.   Further, it is the policy and custom of the City of Buffalo to fail to discipline officers who have multiple complaints lodged against them, exhibiting their deliberate indifference to the constitutional rights of persons in the City and contributing to the constitutional violations against Plaintiffs.

162.    For example, Mr. Staley himself has had to lodge complaints against City of Buffalo police officers for their continued failure to arrest Ms. Worthy for violations of their order of protection.

163.    Upon information and belief, no disciplinary action has been taken against any of those officers.

164.    The City policy and custom of failing to act on these complaints contributed the constitutional violations against Plaintiffs, as Ms. Worthy felt free to continually harass Mr. Staley.

165.    In 2017, it was found that 94% of all complaints against City of Buffalo police officers resulted in no disciplinary action.  Upon information and belief, that statistic remains substantially unchanged.

166.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

## **DEMAND FOR JURY TRIAL**

167.    In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

## **PRAYER FOR RELIEF**

168.    That Plaintiffs be awarded compensatory damages against all defendants in an amount to be determined at trial;

169.    That Plaintiffs be awarded punitive damages against all defendants in an amount to be determined at trial;

170.    That this Court, pursuant to 42 U.S.C. § 1988, issue an order awarding Plaintiffs' attorneys' fees, together with the costs of this action against all defendants; and

171.    That this Court award such other further relief as the Court deems just and proper.

Dated:    January 23, 2024
          Buffalo, New York

                    **RUPP PFALZGRAF** LLC
                    Attorneys for Plaintiffs

                    *s/Timothy P. Noonan, Jr.*
                    R. Anthony Rupp III, Esq.
                    Chad A. Davenport, Esq.
                    Timothy P. Noonan, Jr., Esq.
                    1600 Liberty Building
                    Buffalo, New York 14202
                    Phone: (716) 854-3400
                    rupp@rupppfalzgraf.com
                    davenport@rupppfalzgraf.com
                    noonan@rupppfalzgraf.com